**NATIONAL LABOR RELATIONS BOARD v. WARNER BROS. PICTURES, Inc. et al.**

No. 12568.

United States Court of Appeals Ninth Circuit.

Aug. 20, 1951.

David P. Findling, Associate Gen. Counsel, N L R B, A. Norman Somers, Asst. Gen. Counsel, Frederick U. Reel, and Harvey B. Diamond, all of Washington, D. C., for petitioner National Labor Relations Board.

O'Melveny & Myers, Homer I. Mitchell, W. B. Carman, Jr. and William W. Alsup, all of Los Angeles, Cal., for respondent.

Before DENMAN, Chief Judge, HEALY, Circuit Judge, and GOODMAN, District Judge.

DENMAN, Chief Judge.

The National Labor Relations Board petitions, pursuant to § 10(e) of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., for the enforcement of its order in a proceed-

ing commenced by 24 complainants, requiring respondents to cease and desist from claimed unfair labor practices, to reinstate and make whole some complainants and to pay back pay to others.

The Board found that all three respondents, Warner Bros., Columbia Pictures and Loew's, Inc., had violated § 8(1) of the Act, 29 U.S.C.A. § 158(1)[1].

The specific conduct held to constitute a violation of § 8(1) was by discriminatorily refusing to reinstate 23 complainants held to be employees, 20 at Warner's; 2 at Loew's; 1 at Columbia, because of their collective activities during the strike hereafter described. As to one complainant, found to be a Columbia employee (Hentschel), the violation was based upon a determination that Columbia had re-employed him after the strike had ended and then discriminatorily discharged him after he had worked one day.

Respondents were subjected to a strike called by the Conference of Studio Unions (CSU). This was a jurisdictional strike against the International Alliance of Theatrical Stage Employees, hereafter called Alliance, its rival with 10,000 jobs in the motion picture industry. Respondents had a collective bargaining agreement with Alliance providing that they should employ only persons in good standing with that union. The 24 employees involved in the instant case were members of Alliance. These employees ceased working in sympathy with the striking CSU.

Since the activities of this minority were directly opposed to directives of Alliance, the respondents were entitled to discharge from their employment the Alliance members who so left it. Colgate Palmolive Peet Co. v. National Labor Relations Board, 338 U.S. 355, 70 S.Ct. 166, 94 L.Ed.

---

1. That section provides:

"It shall be an unfair labor practice for an employer—

"(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." This is identical to § 8 (a) (1) in the Taft-Hartley Act.

Section 7, 29 U.S.C.A. § 157 provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engaged in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

161; N. L. R. B. v. Draper Corp., 145 F.2d 199, 204, 156 A.L.R. 989, where such activity is called a "wild cat" strike.

All 24 were regarded as still employees of respondents for several days after the strike began, when 14 were discharged[2] and the remainder accepted by respondents as giving up their jobs. Instead of refusing re-employment when requested after the strike had ended, the respondents, so having the right to refuse, offered to re-employ them if they obtained clearance from Alliance, with whom the respondents had the closed shop agreement. They did not obtain such clearance and commenced this proceeding.

The Board contends that, assuming on the above facts the respondents were entitled to refuse employment to the 24 complainants, they had waived that right in an agreement made by them which terminated the strike. The strike lasted from March 12, 1945 to October 31, 1945. The two unions and respondents met in October in Cincinnati where an agreement was made, to which respondents' answer here admits respondents were parties. The Cincinnati agreement directs that "all *employees* return to work immediately." (Emphasis supplied.)

This phrase must be interpreted in the background (a) of the facts of the dispute which engendered it and (b) of those facts regarding the cessation of employment of the 24.

The basic grievance determined by the Cincinnati agreement was a jurisdictional dispute between the Alliance and the CSU over certain jobs in the motion picture industry. The jobs of the 24 Alliance members engaged in a separate "wild cat" strike were not the subject matter of that basic labor dispute. It was not required of the parties at Cincinnati to deal with the question of which union should represent the jobs of these 24 in order to settle the basic dispute which had tied up the industry. The

men who were ordered back to work by the agreement were those CSU men whose jobs were the subject of a jurisdictional dispute and also the other CSU men in the industry who were pulled off work to back up their union's demand.

Furthermore, the CSU men were employees of the respondents, though striking, at the time of the Cincinnati agreement, while the 24 had ceased to be employees some time after the strike began, and were not employees at the time of that agreement and hence not covered by the phrase "all employees," etc.

Upon this evidence we therefore hold that the Cincinnati agreement did not require the re-employment of the 24 wild cat strikers. In this we are bound by the requirement of 5 U.S.C.A. § 1006(c) that "no sanction shall be imposed or rule or order be issued except upon consideration of the whole record * * * and as supported by and in accordance with the reliable, probative, and substantial evidence."

With respect to complainant Hentschel, employed by respondent Columbia Pictures, he, like the other 23, was a wild cat striker not entitled to be re-employed pursuant to the Cincinnati agreement.

Hentschel was employed anew by Columbia on October 31, 1945, the day the strike ended, but was discharged that same day. We do not regard this employment as condoning his wild cat activities but an inadvertent act promptly corrected. We think Columbia still had cause to discharge him and that the Board cannot order his reinstatement. 29 U.S.C.A. § 160(c) providing, "No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause."

The petition of the Board is denied and its orders sought to be enforced are set aside. 29 U.S.C.A. § 160(e).

2. The Board's finding that none was discharged has no support in any "substantial evidence on the record considered as a whole". Taft-Hartley Act, § 10 (e), 29

U.S.C.A. § 160 (e). The evidence is overwhelming that all ceased employment, 14 of them by specific discharges.